IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| **JARRIT WALOCK, individually and on behalf of all persons similarly situated,** | CIVIL ACTION NO.:17-CV-00099 |
| Plaintiff, | COMPLAINT—COLLECTIVE AND CLASS ACTION |
| v. | JURY TRIAL DEMANDED |
| **FULKRUM TECHNICAL RESOURCES, LTD.** | |
| Defendant. | |

## COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiff Jarrit Walock ("Plaintiff" or "Walock"), through his undersigned counsel, individually and on behalf of all persons similarly situated, files this Collective and Class Action Complaint against Defendant Fulkrum Technical Resources, Ltd. ("Defendant" or "Fulkrum") seeking all available relief under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA") and Minnesota wage and hour laws. The following allegations are based on personal knowledge as to Plaintiff's own conduct and on information and belief as to the acts of others.

## JURISDICTION AND VENUE

1. Jurisdiction over Plaintiff's FLSA claim is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

2. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events giving rise to Plaintiff's and Class Members' claims occurred within this judicial district, and Defendant routinely conducts business in this judicial

district.

3. Plaintiff resides in Minnesota and worked in Minnesota for Defendant on projects worked between January 2015 and March 2015.

**PARTIES**

4. Plaintiff Jarrit Walock is an individual residing in Hillman, Minnesota. Plaintiff was employed by Defendant as an Inspector in Minnesota, Iowa, Kansas and Texas between approximately January 2015 and June 2015. Pursuant to 29 U.S.C. § 216(b), he has consented in writing to being a Plaintiff in this action. *See* Exhibit A.

5. Defendant Fulkrum Technical Resources, Ltd. ("Defendant" or "Fulkrum") is a servicing corporation providing support to oil and gas companies throughout the United States, including in this District, and the world.

6. Defendant is incorporated in Texas and maintains its regional U.S. office in Houston, Texas. Defendant's main headquarters is in Kensington, London.

7. Defendant employed Plaintiff and continues to employ similarly situated employees.

8. Defendant employs individuals engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as required by 29 U.S.C. §§ 206-207.

9. Defendant's annual gross volume of business exceeds $500,000.

10. Defendant is not an independently owned and controlled local enterprise within the meaning of 29 U.S.C. § 207(b)(3).

## CLASS DEFINITIONS

11. Plaintiff brings this lawsuit for Count I pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of himself and the following class of potential opt-in litigants:

> All individuals who were classified as independent contractors while performing inspection services on behalf of Fulkrum Technical Resources, Ltd. ("Fulkrum") in the United States at any time between January 10, 2014 and the present, and who were paid pursuant to a day rate compensation system (the "FLSA Class").

12. Plaintiff brings this lawsuit for Counts II and III pursuant to 29 U.S.C. § 216(b) as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and the following class:

> All individuals who were classified as independent contractors while performing inspection services on behalf of Fulkrum Technical Resources, Ltd. ("Fulkrum") in Minnesota at any time between January 10, 2014 and the present, and who were paid pursuant to a day rate compensation system (the "Minnesota Class").

13. The FLSA Class and the Minnesota Class are together referred to as the Classes.

14. Plaintiff reserves the right to redefine the Classes prior to notice or class certification, and thereafter, as necessary.

## FACTS

15. Fulkrum employs FLSA Class Members throughout the United States.

16. Fulkrum employs inspectors, such as Plaintiff, who perform a variety of inspection services on oil and gas pipelines for energy, public utility and pipeline companies in this judicial district and throughout the United States.

17. Fulkrum's financial results are driven by the number of inspectors

3

performing services for Fulkrum's customers and the fees that Fulkrum charges the customers for these services.

18. Fulkrum charges its inspectors' services out to Fulkrum's customers on a per project basis.

19. Between approximately January 2015 and June 2015, Plaintiff Walock was employed as a pipeline inspector with Fulkrum, performing and reviewing inspections on gas pipelines.

20. Fulkrum employed Plaintiff to inspect pipelines in Minnesota, Kansas, Iowa and Texas.

21. Plaintiff worked in Minnesota for Defendant on and off between January 2015 and March 2015.

22. Plaintiff reviewed and aided colleagues in performing routine inspections of newly-laid pipes. Plaintiff observed other members of the Classes performing the same or substantially similar job duties.

23. Fulkrum improperly misclassified Plaintiff and Class Members as independent contractors, when the economic reality of their position is that of an employee, and Fulkrum retains the right of control, and in fact, actually does control the work.

24. As a result of the misclassification of Plaintiff and Class Members, Fulkrum did not pay them in accordance with the FLSA and state wage and hour laws, and otherwise forced the Plaintiff and provide support services, including pipeline inspection and to bear the costs of Fulkrum's business.

25. The Department of Labor's Wage and Hour Division ("WHD") released

Administrator's Interpretation No. 2015-1, to provide "guidance regarding the application of the standards for determining who is an employee under the Fair Labor Standards Act [FLSA] ... to the regulated community in classifying workers and ultimately in curtailing misclassification.." U.S. Dep't of Labor, Wage & Hour Div., Admin.'s Interpretation No. 2015-1, 1 (July 15, 2015). According to the WHD, "most workers are employees under the FLSA's broad definitions." *Id.*

26. Plaintiff and Class Members qualify as employees under the FLSA's test, as further described below.

27. The work performed by Plaintiff and Class Members is an integral part of the Fulkrum's business. Fulkrum is in the business of providing services to oil and gas companies around world, including the United States. Plaintiff and Class Members provided services to Fulkrum's clients inspecting pipelines.

28. Fulkrum provided standards, protocols and specifications to Plaintiff and Class Members, which they used to provide services to Fulkrum's clients.

29. Plaintiff and Class Members were required to follow the standards, protocols and specifications provided to them by Fulkrum in performing their work.

30. Plaintiff and Class Members have little or no authority to refuse or negotiate Fulkrum's rules and policies.

31. In addition to reserving the right to control the work performed by Plaintiff and Class Members, Fulkrum, in fact, does exercise control over the method and manner in which Plaintiff and the Classes perform their labor for Fulkrum's clients. Such control includes, but is not limited to, the following:

5

a. Fulkrum requires Plaintiff and Class Members to comply with the instructions dictated by written and unwritten policies, procedures, and directives regarding Plaintiff and Class Members' duties.

b. Fulkrum requires Plaintiff and Class Members to prepare reports pursuant to Fulkrum policies and procedures.

c. Fulkrum requires Plaintiff and Class Members to check in daily with their Coordinators at Fulkrum.

d. Fulkrum requires Plaintiff and Class Members to work within a prescribed schedule.

32. Plaintiff and Class Members were unable to perform services for another company while working for Fulkrum due to the amount of hours required of them.

33. Plaintiff and Class Members are economically dependent on Fulkrum. Plaintiff and Class Members were entirely dependent upon Fulkrum for their business, as they were not permitted to perform services for any other company during their time working for Fulkrum.

34. Plaintiff and the Class Members had little or no opportunity to experience a profit or loss related to their employment. Fulkrum paid Plaintiffs and the Class Members a fixed day rate. Plaintiff and Class Members did not share in Fulkrum's monetary success; their income from work was limited to their day rate.

35. Plaintiff and Class Members have little or no authority to refuse or negotiate Fulkrum's rules and policies; they must comply or risk discipline and/or termination.

36. Plaintiff and the FLSA Class Members are all blue collar workers who are

primarily engaged in manual labor duties.

37. Plaintiff's work required the utilization of techniques and procedures obtained primarily from industry manuals, standards and codes. *See* 29 C.F.R. § 541.203(g). Plaintiff observed other members of Class Members utilizing similar techniques and procedures in the performance of their jobs.

38. Plaintiff worked within the closely prescribed limits provided by Fulkrum. *See* 29 C.F.R. § 541.203(g). Plaintiff observed other members of Class Members working in the same or substantially similar manner.

39. Fulkrum has a policy or practice of failing to compensate Plaintiff and Class Members for all overtime hours worked.

40. Fulkrum paid Plaintiff and Class Members pursuant to a daily rate compensation system that did not take into account all hours actually worked in a workweek or overtime hours.

41. Specifically, Fulkrum paid Plaintiff and Class Members a specific set amount per each day that they worked.

42. Plaintiff and Class Members were not paid pursuant to a minimum guarantee per week, and were only paid for days worked.

43. Fulkrum paid Plaintiff and Class Members half of their day rate if worked less than five (5) hours that day.

44. Fulkrum does not maintain accurate records of all hours that Plaintiff and Class Members worked each workday and the total number of hours worked each workweek as required by the FLSA and Minnesota law. *See* 29 C.F.R. § 516.2(a)(7); Minn.

Stat. § 177.30(a).

45. Plaintiff routinely worked up to six (6) days per week and typically more than ten (10) hours per day. Plaintiff observed that Class Members routinely worked similar schedules.

46. Fulkrum did not pay Plaintiff and Class Members any overtime compensation for hours worked over forty (40) per workweek.

47. Plaintiff routinely worked straight through without a meal break or rest break. Plaintiff observed the Class Members working in the same or substantially similar manner.

48. Fulkrum does not provide Plaintiff and Class Members with meal and rest breaks during their scheduled shifts.

49. In 2011, prior to the start of the relevant time period in this case, the United States Court of Appeals for the Tenth Circuit held that a similar compensation scheme by an oilfield services company was not only unlawful, but constituted a willful violation of the FLSA. *See Mumby v. Pure Energy Servs. (USA), Inc.*, 636 F.3d 1266, 1268 (10th Cir. 2011). Since *Mumby*, many oil and gas service companies have reclassified their daily rate workers to come into compliance with the FLSA. Fulkrum, however, has not done so.

50. As a global energy staffing provider, there is no question that Fulkrum has access to human resource expertise and legal counsel who can advise Fulkrum on its FLSA and state wage and hour law compliance obligations.

51. Fulkrum has acted willfully and/or with reckless disregard of the applicable FLSA provisions, by failing to properly compensate Plaintiff and Class Members for hours worked in excess of forty (40) during the workweek.

52. Fulkrum has acted willfully and/or with reckless disregard of the applicable Minnesota wage and hour laws, by failing to properly compensate Plaintiff and Class Members for hours worked in excess of forty-eight (48) during the workweek.

53. Moreover, during the entire relevant time period, Fulkrum was aware that the Class Members were not properly compensated under the FLSA and Minnesota wage and hour laws, because the Class Members' timesheets clearly demonstrate that they were routinely working more than forty-eight (48) hours per week (based on the number of days they were working) but were not receiving overtime compensation.

54. Furthermore, Fulkrum failed to properly track, monitor or record the actual number of hours per day that the FLSA Class Members worked, as required by the FLSA. *See* 29 U.S.C.A. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c) (requiring employers to maintain payroll records for three years and time sheets for two years, including the exact number of hours worked each day and each week).

55. Furthermore, Fulkrum failed to properly track, monitor or record the actual number of hours per day that the Minnesota Class Members worked, as required by Minnesota wage and hour laws. *See* Minn. Stat. § 177.30(a); Minn. R. 5200.0100 (requiring employers to maintain payroll and time records for three years, including the exact number of hours worked each day and each week).

**COLLECTIVE ACTION ALLEGATIONS**

56. Plaintiff brings this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of FLSA Class defined above.

57. Plaintiff desires to pursue his FLSA claim on behalf of any individuals who

opt-in to this action pursuant to 29 U.S.C. § 216(b).

58. Plaintiff and the FLSA Class are "similarly situated," as that term is used in 29 U.S.C. § 216(b), because, *inter alia*, all such individuals worked pursuant to Fulkrum's previously described misclassification and common pay practices and, as a result of such practices, were not paid the full and legally mandated overtime premium for hours worked over forty (40) during the workweek. Resolution of this action requires inquiry into common facts, including, *inter alia*, Fulkrum's common compensation, timekeeping and payroll practices.

59. Specifically, Fulkrum paid Plaintiff and the FLSA Class a set amount of pay per day, regardless of the number of hours worked, and failed to pay overtime as required by federal law.

60. Further, Fulkrum misclassified Plaintiff and the FLSA Class as independent contractors and failed to pay overtime as required by federal law.

61. The similarly situated employees are known to Fulkrum, are readily identifiable, and may be located through Fulkrum's records, as well as the records of any payroll companies that Fulkrum utilizes. Fulkrum employs many FLSA Class Members throughout the United States. These similarly situated employees may be readily notified of this action through direct U.S. mail and/or other appropriate means, and allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for overtime compensation, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

## CLASS ACTION ALLEGATIONS

62. Plaintiff also brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the Minnesota Class, as defined above.

63. The members of the Minnesota Class are so numerous that joinder of all members is impracticable. Upon information and belief, there are more than forty (40) members of the Minnesota Class.

64. Plaintiff will fairly and adequately represent and protect the interests of the Minnesota Class because there is no conflict between the claims of Plaintiff and those of the Minnesota Class, and Plaintiff's claims are typical of the claims of the Minnesota Class. Plaintiff's counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one.

65. There are questions of law and fact common to the proposed Minnesota Class, which predominate over any questions affecting only individual Class members, including, without limitation: whether Defendant has violated and continues to violate Minnesota law through its policy or practice of misclassifying their employees as independent contractors and not paying overtime compensation.

66. Plaintiff's claims are typical of the claims of the Minnesota Class in the following ways: 1) Plaintiff is a member of the Minnesota Class; 2) Plaintiff's claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the Minnesota Class; 3) Plaintiff's claims are based on the same legal and remedial theories as those of the Minnesota Class and involve similar factual circumstances; 4) there are no conflicts between the interests of Plaintiff and the Minnesota Class members; and 5) the

injuries suffered by Plaintiff are similar to the injuries suffered by the Minnesota Class members.

67. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Minnesota Class predominate over any questions affecting only individual Class members.

68. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Minnesota Class is readily identifiable from Defendant's own employment records. Prosecution of separate actions by individual members of the Minnesota Class would create the risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendant.

69. A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Furthermore, the amounts at stake for many of the Minnesota Class members, while substantial, are not great enough to enable them to maintain separate suits against Defendant. Without a class action, Defendant will retain the benefit of its wrongdoing, which will result in further damages to Plaintiff and the Minnesota Class. Plaintiff envisions no difficulty in the management of this action as a class

action.

## COUNT I
## Violation of the FLSA
## (On Behalf of Class Members)

70. All previous paragraphs are incorporated as though fully set forth herein.

71. The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which he is employed. *See* 29 U.S.C. § 207(a)(1).

72. The FLSA provides that, if an employee is paid a flat sum for a day's work or for doing a particular job, and if he receives no other form of compensation for services, the employee is entitled to extra half-time pay at his regular rate for all hours worked in excess of forty (40) in the workweek. *See* 29 C.F.R. § 778.112.

73. Fulkrum's compensation scheme applicable to Plaintiff and Class Members failed to comply with either 29 U.S.C. § 207(a)(1) or 29 C.F.R. § 778.112.

74. Plaintiff and the FLSA Class are not exempt from the requirements of the FLSA.

75. Plaintiff and the FLSA Class are entitled to be paid overtime for hours worked over forty (40) in a workweek, pursuant to 29 U.S.C. § 207.

76. Fulkrum knowingly failed to compensate Plaintiff and Class Members at a rate of one and one-half (1 ½) times their regular hourly wage for hours worked in excess of forty (40) hours per week, in violation of 29 U.S.C. § 207(a)(1).

77. Pursuant to 29 U.S.C. § 216(b), employers, such as Fulkrum, who intentionally fail to pay an employee wages in conformance with the FLSA shall be liable

to the employees for the wages or expenses that were intentionally not paid, liquidated damages, attorneys' fees and costs.

78. During all relevant times, Plaintiff and Class Members were covered employees entitled to the above-described FLSA protections.

79. In violating the FLSA, Fulkrum acted willfully and/or with reckless disregard of clearly applicable FLSA provisions.

## COUNT II
### Violation of the Minnesota Fair Labor Standards Act
### On Behalf of the Minnesota Class

80. All previous paragraphs are incorporated as though fully set forth herein.

81. Overtime compensation due to employees working in Minnesota is governed by Minnesota Fair Labor Standards Act ("MFLSA"), Minn. Stat. Ann. §§ 177.21 to 177.35.

82. MFLSA requires that employees be compensated for all hours worked in excess of forty-eight (48) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which he is employed. *See* Minn. Stat. Ann. § 177.25.

83. The MFLSA defines "employer" broadly to include "any individual, partnership, association, corporation, business trust, or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee." Minn. Stat. Ann. § 177.23 Subd. 6.

84. Fulkrum is subject to the wage requirements of the MFLSA because Fulkrum is an "employer" under Minn. Stat. Ann. § 177.23 Subd. 6.

85. During all relevant times, Plaintiff and the Minnesota Class are covered employees entitled to the above-described MFLSA's protections. *See* Minn. Stat. Ann. §

177.23 Subd. 7.

86. Plaintiff and the Minnesota Class are not exempt from the requirements of the MFLSA.

87. As a result of Fulkrum's failure to record, report, credit and/or compensate Plaintiff and the Minnesota Class, Fulkrum has failed to make, keep and preserve records with respect to each of their employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the MFLSA.

88. By virtue of Fulkrum's failure to pay Plaintiff and the Minnesota Class members the legally required overtime wages for all hours worked in excess of forty-eight (48) hours per week, Fulkrum violated Minn. Stat. Ann. § 177.25.

89. Pursuant to Minn. Stat. Ann. § 177.27, employers, such as Fulkrum, who willfully fail to pay employees wages in conformance with the MFLSA shall be liable to the employees for the unpaid wages or expenses, liquidated damages, and attorneys' fees and court costs.

90. In violating the MFLSA, Fulkrum acted willfully and/or with reckless disregard of clearly applicable MFLSA provisions.

## COUNT III
### Failure to Provide Rest Breaks and Meal Periods
### On Behalf of the Minnesota Class

91. All previous paragraphs are incorporated as though fully set forth herein.

92. The MFLSA prohibits an employer from employing an employee for a work period of more than four (4) consecutive hours per day without providing the employee with a rest period, or for a work period of eight (8) or more hours longer than a normal

work day without providing the employee with a meal period. *See* Minn. Stat. Ann. §§ 177.252 and 177.253.

93. Fulkrum knowingly failed to provide Plaintiff and the Minnesota Class with meal periods as required by law, and knowingly failed to authorize and permit Plaintiff and the Minnesota Class to take rest periods as required by law.

94. The MFLSA prohibits any employer from requiring any employee to work during any meal or rest period, and provides that an employer that fails to provide an employee with a required rest break or meal period shall compensate that employee for the unpaid breaks at the employee's regular rate of compensation for each break that the employer does not provide a compliant meal or rest period.

95. Pursuant to Minn. Stat. Ann. § 177.27, employers, such as Fulkrum, who willfully fail to pay employees wages in conformance with the MFLSA shall be liable to the employees for the unpaid wages or expenses, liquidated damages, and attorneys' fees and court costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of Class Members, seeks the following relief:

    A.    An order permitting this litigation to proceed as an Class Members action pursuant to 29 U.S.C. § 216(b);

    B.    Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential FLSA Class Members;

    C.    An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the Minnesota Class;

D. Back pay damages (including unpaid overtime compensation and unpaid wages) and prejudgment interest to the fullest extent permitted under the law;

E. Liquidated damages to the fullest extent permitted under the law;

F. Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and

G. Such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury for all issues of fact.

Dated: January 10, 2017

Respectfully submitted,

BERGER & MONTAGUE, P.C.

/s/E. Michelle Drake
E. Michelle Drake (MN 0387366)
BERGER & MONTAGUE, P.C.
43 SE Main Street
Suite 505
Minneapolis, MN 55414
Telephone: (612) 594-5933
Facsimile: (612) 584-4470
emdrake@bm.net

Shanon J. Carson (PA 85957) *
Sarah R. Schalman-Bergen (PA 206211) *
Camille Fundora (PA 312533) *
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA  19103
Telephone:  (215) 875-3000
Facsimile:   (215) 875-4604
scarson@bm.net
sschalman-bergen@bm.net
cfundora@bm.net

*Attorneys for Plaintiff and the Proposed Classes*

*Application for Admission to be Filed*